**FILED**
**Feb 24, 2026**
**04:14 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| **WIGELIA WHITE,** | ) | **Docket No. 2025-80-0023** |
| **Employee,** | ) | |
| **v.** | ) | |
| **FEDERAL EXPRESS CORP.,** | ) | **State File No. 71161-2024** |
| **Employer,** | ) | |
| **And,** | ) | |
| **INDEMNITY INS. CO. OF N. AMER.,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

## COMPENSATION ORDER

The Court held a compensation hearing on February 17, 2026. The issues were whether Ms. White gave proper notice of an alleged back injury and if her injury primarily arose out of her employment. For the reasons below, the Court holds Ms. White did not prove by a preponderance of the evidence that she gave proper notice or that her injury arose primarily out of her employment.

### History of Claim

Ms. White, a material handler for Federal Express, alleged she injured her back on August 7, 2024, while moving a mailbag. She claimed she verbally reported the injury that day to her supervisor, Darneshia Richmond, who did not acknowledge her.

Ms. White then sought medical treatment on her own. On August 23, she went to a family medical clinic, where she reported she had back and left leg pain for one week. Ms. White said she frequently stood on concrete at work but did not mention any injury. A note from a 2023 visit at the clinic documented a history of back pain.

On September 13, Ms. White went to an orthopedic clinic, where she reported that low-back pain radiating down her left leg had been present for months. The doctor noted Ms. White worked at Federal Express "sorting mail" and she thought her work might be

1

aggravating her pain. The doctor wrote of an "insidious onset" of pain and that Ms. White did not report a work injury.

One week later, on September 20, Ms. White wore a neck brace to work. She did not mention an injury when Ms. Richmond asked her why she was wearing the brace. However, because of Federal Express's rule against wearing a brace at work, Ms. Richmond asked Ms. White to complete a written statement.

In her statement, Ms. White wrote: "I am not reporting an injury. I am reporting this information to my manager Darneshia Richmond with the [safety manager] present." The statement contains no mention of what "information" Ms. White was referring to. Ms. White felt "coerced" by Ms. Richmond and the other manager into what to write, but Ms. Richmond denied any coercion.

On September 23, Ms. White asked to supplement her statement. She then wrote that she was "assigned to work bag stands on line one in August" but could not remember exactly when. Also, she told both her team leader and Ms. Richmond that the bag stands were too heavy and that a male coworker helped her on the night when she felt back and left-leg pain. She wrote that she reported the pain to Ms. Richmond that night but did not remember the date.

After the second statement, Federal Express offered Ms. White a panel of physicians, and she chose Dr. James Escue. On September 27, she told Dr. Escue that the pain in her back and left leg "started after lifting heavy packages at work 7 weeks ago." She also told Dr. Escue she reported the injury the same day "but did not get any instructions for further evaluation until last week." She denied any prior back pain.

Dr. Escue diagnosed disc disorders with radiculopathy and a strain. He wrote that Ms. White's symptoms began while performing her job duties and they "contributed more than 50% to the need for medical treatment."

Federal Express later wrote Dr. Escue and asked him to consider that Ms. White reported no injury to either the family medical or orthopedic clinics and that she had back pain in 2023. Dr. Escue replied:

> The newly provided documentation for undisclosed prior treatment indicates degenerative disc disease processes that have been present for months. Additionally, there is no report of heavy lifting [of] boxes as the cause of an injury or aggravation of symptoms. The only activity listed is standing which is not exclusive to her employment. Therefore the symptoms reported on September 27, 2024 are not more than 50% related to the alleged work incident.

In December 2024, Ms. White began treatment on her own with chiropractor Brian Henry. He noted she complained of back and left-leg pain from a lifting incident at work. He treated her several months continuing into 2025. He believed Ms. White had a disc protrusion and obtained an MRI that showed one.

Dr. Henry completed a C-32 form for Ms. White in February 2025 and checked that the lifting incident was more likely than not the cause of Ms. White's injury and her need for treatment. He said she was not yet at maximum medical improvement but still assessed a 30% impairment rating that was admittedly not arrived at using the *AMA Guides*.

UPS objected to the C-32 and deposed Dr. Henry. He testified that Ms. White's injury happened "back in August" but he was "not for sure . . . it may have been May. I don't know." Dr. Henry said the work "possibly" could have aggravated a preexisting back condition, but when asked if any aggravation was 50% or more related, he said: "I don't know. I mean, I don't know exactly."

When Ms. White questioned Dr. Henry, he replied that the August lifting incident was "work-related" and heavy lifting was a "contributing factor." However, Federal Express later asked if the alleged lifting incident contributed more than 50% to Ms. White's condition, and he said, "I'm not for sure."

In his deposition, Dr. Escue testified that Ms. White's symptoms and need for medical treatment were not more than 50.1% related, answering the question as Federal Express framed it. He was asked to review the medical records of the clinics where Ms. White treated, including the family medical clinic record from 2023, and reiterated his previous response to Federal Express's letter. Specifically, he maintained Ms. White's injury was not work-related.

Ms. White testified that she told Ms. Richmond of her injury on August 7. She cross-examined Ms. Richmond to that effect, but Ms. Richmond denied any verbal report. Ms. White also said she felt coerced when writing her statements because multiple managers were present. She did not tell the medical providers she was claiming workers' compensation because she feared her bills would not be paid.

Ms. Richmond testified that she consistently follows Federal Express's protocol for injury reports and Ms. White did not verbally report one. She had Ms. White complete a written statement after seeing her wearing a neck brace but said no one coerced Ms. White into writing anything.

Ms. White argued Dr. Escue used an improper standard when he said her injury was not "50.1%" or more related rather than 50% or more. Regardless, she said Dr. Henry rebutted the presumption of correctness attached to Dr. Escue's opinion because Dr. Henry said the injury was work-related and explained she had a disc protrusion. She contended

her records from the two clinics showed she had sciatica, which she did not have before the injury.

Federal Express argued Ms. Richmond was more credible and that Ms. White did not provide proper notice. Further, Dr. Henry's testimony was flawed as to his opinions regarding causation.

### Findings of Fact and Conclusions of Law

Ms. White must prove notice and causation by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2025).

*Notice*

The Court follows the analytical framework of *Ernstes v. Printpack, Inc.*, No. W2023-00863-SC-R3-W3, 2024 Tenn. LEXIS 1, at *13-14 (Tenn. Workers' Comp. Panel Jan. 2, 2024).

First, did Ms. White provide Federal Express with written notice of her alleged injury within 15 days of its occurrence? *Id.* at *13. She did not. The first written notice was in September, well over one month after the alleged injury.

Second, in the absence of timely written notice, did Federal Express have actual knowledge of Ms. White's alleged injury? *Id.* The Court finds it did not.

Ms. White claimed she verbally reported her August injury to Ms. Richmond on the day it occurred. Ms. Richmond denied that. Ms. Richmond was calm, steady, self-assured, and reasonable, all indicia of witness credibility. *Kelly v. Kelly*, 445 S.W.3d 685, 695 (Tenn. 2014). When considering both witnesses' testimony, the Court accredits Ms. Richmond. Likewise, Ms. White's later request to modify her first written statement to report an injury is inconsistent with her saying she had already reported it.

Third, in the absence of timely written notice or Federal Express's actual knowledge of an injury, did Ms. White have a reasonable excuse for failing to give proper notice? *Id.* at *13-14. The Court finds she did not. If the Court accepts Ms. White's version of the events, her injury occurred in August, and she knew specifically when and how it occurred. If those facts were true, then she had no excuse for not timely reporting her injury then.

Because the answers to the above three questions are no, *Ernstes* requires that the Court dismiss the claim.

*Causation*

Alternatively, even if Ms. White proved she gave proper notice, she did not establish

that her injury or need for medical treatment arose primarily out of her employment.[1] Specifically, she did not show to a reasonable degree of medical certainty that her injury or need for treatment was more than 50% related. Shown to a reasonable degree of medical certainty means a physician says an injury or need for medical treatment was more likely than not related to the employment when considering all causes, and not "speculation or possibility." *Id.* § 50-6-102(12)(A)-(D).

Dr. Henry completed a C-32 in which he checked that the injury was more likely than not related. However, when cross-examined, Dr. Henry could not state the date of injury and was "not for sure if" the work contributed more than 50% to it. His opinion regarding an aggravation of a preexisting condition was nothing more than a possibility.

In contrast, Dr. Escue testified that neither Ms. White's symptoms nor her need for medical treatment were more than 50.1% related. Ms. White made a technical argument that Dr. Escue applied an incorrect standard because he did not testify whether the injury related more than 50% to work. However, Dr. Escue also said any relation was less than 50% when responding to Federal Express's questions. Regardless, physicians need not adhere to a rigid recitation of the statutory definition of medical causation if a court can conclude the testimony satisfies the definition. *Panzarella v. Amazon.com*, 2017 TN Wrk. Comp. App. Bd. LEXIS 30, at *14 (May 15, 2017).

Further, as the authorized treating physician, his causation opinion is presumed correct. *Id.* § 50-6-102(12)(E). The Court finds Dr. Escue's testimony is sufficient to show that he does not believe Ms. White's injury was work-related, and Dr. Henry's opinion does not rebut the presumption of correctness attached to Dr. Escue's opinion.

In sum, the Court holds Ms. White did not establish that her alleged injury arose out of her employment at Federal Express.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. White's claim for benefits is denied because she did not prove she gave proper notice of her injury or that it arose primarily out of her employment.

2. The Court taxes the $150.00 filing fee to Federal Express, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (2023) within five business days of this order becoming final, and for which execution might issue if necessary.

3. Federal Express shall file a Statistical Data Form (SD2) with the Court Clerk within

---

[1] If an appellate court finds error in the notice holding, the Court makes the alternative finding on causation for judicial economy. *See Cunningham v. Shelton Sec. Serv.*, 46 S.W.3d 131, 137-38 (Tenn. 2001) ("The trial court should . . . hear the entire case and make appropriate findings of fact, and alternative findings when necessary, for appellate review.").

5

ten business days of the date this order issues.

4.  Unless appealed, this order shall be final 30 days after entry.

**ENTERED February 24, 2026.**

_Allen Phillips_

**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

**APPENDIX**

Exhibits:
1.  Ms. White's September 20, 2024 statement
2.  Ms. White's email requesting to amend her statement
3.  Ms. White's September 23, 2024 statement
4.  Choice of Physician Form
5.  Social Security Administration letter
6.  DeSoto Family Medical Center records
7.  OrthoSouth records
8.  Dr. James E. Escue deposition
9.  DeSoto Imaging records
10. Dr. Brian Henry C-32 form-February 14, 2025
11. Dr. Brian Henry C-32 form-November 4, 2025
12. Dr. Brian Henry deposition

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on February 24, 2026.

| Name | US Mail | Email | Service Sent To: |
|---|---|---|---|
| Wigelia White, Employee | X | X | 1779 Pomona Ave., Memphis, TN 38116 wwhite32@comcast.net |
| Joseph Baker, Employer's Attorney | | X | jbaker@mckuhn.com mdoherty@mckuhn.com |

_____

**Penny Shrum, Court Clerk**
**Wc.courtclerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board. To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
   - ➢ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
   - ➢ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.

   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal. If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee. If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk. The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted. For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable. See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



## NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

### Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

### Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____   2. Address: _____

3. Telephone Number: _____   4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

    My employer's address is: _____

    My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | | |
|---|---|---|---|---|
| AFDC | $ _____ | per month | beginning | _____ |
| SSI | $ _____ | per month | beginning | _____ |
| Retirement | $ _____ | per month | beginning | _____ |
| Disability | $ _____ | per month | beginning | _____ |
| Unemployment | $ _____ | per month | beginning | _____ |
| Worker's Comp. | $ _____ | per month | beginning | _____ |
| Other | $ _____ | per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month       Medical/Dental  $ _____ per month

Groceries        $ _____ per month        Telephone     $ _____ per month

Electricity      $ _____ per month        School Supplies $ _____ per month

Water            $ _____ per month        Clothing       $ _____ per month

Gas              $ _____ per month        Child Care     $ _____ per month

Transportation  $ _____ per month        Child Support  $ _____ per month

Car              $_____ per month

Other            $ _____ per month (describe: _____ )

10. Assets:

Automobile            $ _____        (FMV) _____

Checking/Savings Acct. $ _____

House                 $ _____        (FMV) _____

Other                 $ _____        Describe:_____

11. My debts are:

Amount Owed                    To Whom

_____                   _____

_____                   _____

_____                   _____

_____                   _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                               RDA 11082